UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter Allan, Sr.,                                           Case No. 17-cv-152 (NEB/LIB)

            Plaintiff,

v.                                                                    **ORDER AND**
                                                         **REPORT AND RECOMMENDATION**
Emily Johnson Piper, et al.,

            Defendants.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss, [Docket No. 25]; Plaintiff's Motion to Appoint Counsel, [Docket No. 37]; and Defendants' Motion for Extension of Time. [Docket No. 42]. The Court took the parties' Motions under advisement on the written submissions of the parties.

For the reasons discussed herein, Plaintiff's Motion to Appoint Counsel, [Docket No. 37], is **DENIED**, and Defendants' Motion for Extension of Time, [Docket No. 42], is **GRANTED**.

Furthermore, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 25], be **GRANTED in part** and **DENIED in part** and the above captioned matter be **DISMISSED without prejudice**.

## I.    Background[1]

Plaintiff Peter Allan, a patient civilly committed in the Minnesota Sex Offender Program (hereinafter "MSOP"), proceeding pro se, initiated this action on January 6, 2017,[2] naming as Defendants Emily Johnson Piper, David Herman, Nancy Johnston, Janine Hebert, Peter Puffer, Susan Johnson, Katherine Lockie, Nancy Stacken, Elizabeth Peterson, Kevin Moser, Scott Sutton, Terry Kniesel, Gene Anderson, Scott Benoit, Jerry Fjerkenstad, Steve Sadjak, Dana Osborne, Tara Osborn, Megan Miller, Jenna Younker, and Ross Peterson. (Compl. [Docket No. 1]). Plaintiff alleges that Defendants are all employees of the Minnesota Department of Health and Human Services and responsible for overseeing the operations of the MSOP. (Id.). Plaintiff sues each Defendant in their individual and official capacity. (Id.).

The allegations in Plaintiff's Complaint center around the MSOP's "End of Life Care" policy and the MSOP's "Helping Hands Volunteers" policy. (See Id.). The MSOP's "End of Life Care" policy's stated purpose is to "establish a standard of care for MSOP clients at end of life" while the clients remain in the care of the MSOP. (End of Life Care Policy [Docket No. 28-1]). The "End of Life Care" policy generally provides that the MSOP will attempt to honor the client's preferences in dealing with end-of-life decisions, such as living arrangements and advanced directives; outlines a policy for outside visitors and telephone calls; and includes a description of the end-of-life care related duties of various members of the MSOP staff. (Id.).

---

[1] For the purposes of the present motion to dismiss, the Court accepts the facts alleged in the Complaint as true and construes said facts in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008). The facts here are taken from Plaintiff's Complaint, [Docket No. 1], as well as, documents and judicial records implicitly referenced in Plaintiff's Complaint and matters of public record. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a Court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

[2] On February 7, 2017, this matter was stayed pending the resolution of Karsjens v. Jesson, No. 11-cv-3659 (DWF/TNL). On October 3, 2022, the stay of this matter was lifted.

Relatedly, the MSOP's "Helping Hands Volunteer" policy establishes "a process for MSOP clients to provide support to and receive personal cares from their peers." (Helping Hands Volunteer Policy [Docket No. 28-1]). The Helping Hands Volunteer Policy defines a Helping Hands Volunteer as "a client participating in the Helping Hands Volunteer program who provides hands on personal cares to clients facing end of life." (Id.).

Plaintiff does not take issue with the content of these policies. (See Id.). Instead, Plaintiff take issue with any person who becomes eligible for end-of-life care being required to remain in the MSOP. (See Id.). Specifically, Plaintiff alleges that the MSOP subjects clients to the "End of Life Care" policy who "cannot help themselves" and who "obviously don't meet any commitment criteria." (Id. at 18). Plaintiff asserts that "[i]t is obvious the dying humans meet the special conditions stated in the . . . discharge statute yet not one person has ever been even petitioned for discharge and will remain until death in a hopeless, heartless infirmary under guard." (Id.). In other words, Plaintiff asserts that if a MSOP client meets the qualifications to become subject to the MSOP's "End of Life Care" policy, then said client also necessarily meets the criteria for discharge from the MSOP. (See Id.). Plaintiff further asserts that the MSOP is not "supposed to be a hospice facility," (Id. at 26) (capitalization corrected), and Defendants violate their "standard of professional judgment" by continuing to civilly committee any client who is on said client's "death bed." (Id. at 25–26).

On the basis of the allegations in his Complaint, Plaintiff purports to assert three causes of action. (Id. at 32–42). In Count I, Plaintiff asserts a claim he entitles, "Denial of Right to be Free from Punishment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution." (Id. at 32–34). In Count II, Plaintiff alleges that the allegations in the Complaint demonstrate that Defendants violated Plaintiff's right to be free

from inhumane treatment. (Id. at 35–38). In Count III, Plaintiff asserts that Defendants' alleged conduct denied Plaintiff equal protection under the laws as secured by the United States Constitution and the Minnesota Constitution. (Id. at 32–42).[3] Each of Plaintiff's purported causes of action is based on his claim that the existence of the end-of-life protocols at the MSOP is unconstitutional because any person who qualifies for such care also necessarily qualifies for discharge from the MSOP.

As relief, Plaintiff seeks monetary damages in the form of actual, compensatory, and punitive damages. (Id. at 48).

## II.    Defendants' Motion to Dismiss. [Docket No. 25].[4]

Defendants seek an Order of this Court having all of Plaintiff's claims dismissed with prejudice. (See Defs.' Mot. [Docket No. 25]; Def.'s Mem. [Docket No. 27] at 1; Proposed Order [Docket No. 31]).[5] Defendants argue that Plaintiff's claims should be dismissed because the Plaintiff lacks standing to pursue some of the claims asserted in the present case, because

[3] In their Motion to Dismiss, Defendants interpret Plaintiff's Complaint as raising several other claims and causes of action, including a challenge to Plaintiff's civil commitment, a claim for a less restrictive alternative to his civil commitment, and a separate equal protection claim. (See Defs.' Mem. [Docket No. 27] at 2–4, 15–22). Defendants' construction of Plaintiff's Complaint is not supported by Plaintiff's Complaint itself or Plaintiff's other filings in this case. Although Plaintiff's Complaint does contain some factual allegations outlining the history of his civil commitment and several assertions of law which are spuriously related to his causes of action, Plaintiff's Complaint makes clear that his only claim in the present case—albeit through three distinct causes of action—is his claim surrounding the MSOP's "End of Life Care" policy. (See Compl. [Docket No. 1]). Plaintiff's sole challenge in the present case is that the existence of the MSOP's "End of Life Care" policy is unconstitutional because any client who qualifies for end-of-life care necessarily qualifies for discharge from the MSOP. (See Id.). This construction of Plaintiff's Complaint is supported by Plaintiff's other filings, including his memorandum in opposition to the present Motion. (Plf.'s Mem. [Docket No. 35]).
[4] As alluded to above, Defendants have also filed a Motion for Extension of Time. [Docket No. 42]. In this Motion, Defendants ask this Court to accept their reply memorandum which was filed one day after the deadline by which Defendants were required to file their reply memorandum. Based on the circumstances of the present case, the Court finds that Defendants have demonstrated good cause for this Court to accept the late filing and Plaintiff will not be prejudiced by the Court's acceptance of Defendants' reply memorandum. Therefore, Defendants' Motion for Extension of Time, [Docket No. 42], is granted.
[5] Although the present Motion to Dismiss is brought by less than all the named Defendants, Plaintiff is proceeding in forma pauperis, and therefore, the undersigned will review Plaintiff's Complaint as it relates to all Defendants. See 28 U.S.C. § 1915(e)(2). When a plaintiff is proceeding in forma pauperis under § 1915, as Plaintiff is in the present action, "the court shall dismiss the case at any time if the court determines that the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." Id. It is, therefore, this Courts obligation to review Plaintiff's Complaint in its entirety as asserted against all Defendants.

4

Plaintiff's claims are barred by the doctrine of res judicata, and because Plaintiff has failed to state a claim for which relief may be granted. (Defs.' Mem. [Docket No. 27] at 1–2). In the alterative, Defendants argue that they are entitled to qualified immunity. (Id.).

Before the Court may consider the merits of Plaintiff's claim, the Court must ensure it has the requisite subject matter jurisdiction to adjudicate Plaintiff's claim. Gray v. City of Valley Park, Mo., 567 F.3d 976, 982–83 (8th Cir. 2009); Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)); S. Dakota Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 591 (8th Cir. 2003). It is the burden of the party asserting the existence of jurisdiction, in the present case Plaintiff, to establish the existence of the requisite subject matter jurisdiction. See, e.g., Gray v. City of Valley Park, Mo., 567 F.3d 976, 982–83 (8th Cir. 2009).

Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Article III's limitation on the federal courts' jurisdiction is commonly referred to as the "case or controversy" requirement. Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 (8th Cir. 1995) (quoting Arkansas AFL–CIO v. F.C.C., 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)). The Eighth Circuit Court of Appeals defines "case or controversy" to require "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir. 1992). "Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and

mootness." <u>Gray v. City of Valley Park, Mo.</u>, 567 F.3d 976, 982–83 (8th Cir. 2009) (quoting <u>Schanou</u>, 62 F.3d at 1042).

As relevant to the present case, the Court must ensure that Plaintiff has standing to pursue the present claim and that Plaintiff's claim is ripe for this Court's consideration. If a plaintiff lacks standing to assert a claim or a claim is not ripe for adjudication, the court is without subject matter jurisdiction to adjudicate that claim. <u>See, e.g.</u>, <u>S. Dakota Farm Bureau, Inc. v. Hazeltine</u>, 340 F.3d 583, 591 (8th Cir. 2003); <u>Gray</u>, 567 F.3d at 982–83. If the Court is without the requisite subject matter jurisdiction over a claim, then the claim must be dismissed. <u>See</u> Fed. R. Civ. P. 12(h)(3).

To demonstrate "Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." <u>S. Dakota v. U.S. Dep't of Interior</u>, 665 F.3d 986, 989 (8th Cir. 2012). The injury alleged may not be speculative or conjectural in nature. <u>See</u> <u>Id.</u>

Similarly,

[r]ipeness is demonstrated by a showing that a live controversy exists such that plaintiff[] will sustain immediate injury from the operation of the challenged provisions, and that the injury would be redressed by the relief requested. In other words, "[a] plaintiff who challenges a statute [or policy] must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."

<u>Emps. Ass'n, Inc. v. United Steelworkers of Am., AFL-CIO-CLC</u>, 32 F.3d 1297, 1299 (8th Cir. 1994) (citation omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" <u>Minnesota Pub. Utilities Comm'n. v. F.C.C.</u>, 483 F.3d 570, 582 (8th Cir. 2007); <u>see</u> <u>Emps. Ass'n, Inc. v. United Steelworkers of Am., AFL-CIO-CLC</u>, 32 F.3d 1297, 1299 (8th Cir. 1994). A prospective

plaintiff is not, however, required "to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending that is enough." <u>Emps. Ass'n, Inc. v. United Steelworkers of Am., AFL-CIO-CLC</u>, 32 F.3d 1297, 1299 (8th Cir. 1994).

To satisfy this ripeness inquiry, the "party seeking review must show both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Both of these factors are weighed on a sliding scale, but each must be satisfied to at least a minimal degree." <u>Iowa League of Cities v. E.P.A.</u>, 711 F.3d 844, 867 (8th Cir. 2013) (citation omitted). "The fitness prong safeguards against judicial review of hypothetical or speculative disagreements. The hardship prong asks whether delayed review inflicts significant practical harm on the plaintiffs." <u>Parrish v. Dayton</u>, 761 F.3d 873, 875 (8th Cir. 2014) (citation omitted).

The ripeness and standing doctrines are related in that they both share the constitutional prerequisite of requiring plaintiff to demonstrate an imminent, concrete injury-in-fact. <u>See</u> <u>gen.</u> <u>Iowa League of Cities v. E.P.A.</u>, 711 F.3d 844, 867–70 (8th Cir. 2013). The two doctrines differ, however, in the temporal nature of the underlying inquiry. "'Ripeness is . . . governed by the situation at the time of review, rather than the situation at the time of the events under review" or at the time the action was commenced. <u>Id.</u> at 867. On the other hand, standing "is to be determined as of the commencement of the suit." <u>Id.</u> at 869.

Although ripeness and standing differ in the underlying point in time to be considered, the Court may simultaneously consider the imminent injury requirement of both doctrines when the relevant circumstances have not materially changed from the time the underlying claim was commenced and the time of the Court's evaluation. <u>North Dakota v. Heydinger</u>, 15 F. Supp. 3d 891, 905–06 (D. Minn. 2014), <u>aff'd</u>, 825 F.3d 912 (8th Cir. 2016). This is the circumstance now

before the Court in the present case; thus, the Court will address both standing and ripeness simultaneously.

In the present case, the Court finds that even liberally construing Plaintiff's Complaint in his favor[6] and accepting as true all factual allegations in the Complaint, Plaintiff has failed to demonstrate an imminent, concrete injury resulting from the allegations in his Complaint. Although Plaintiff takes issue with the "End of Life Care" policy because he believes any person qualifying for such care necessarily qualifies for release from the MSOP, Plaintiff does not allege that he presently or imminently will meet the qualifications for being subjected to the MSOP's "End of Life Care" policy. (See Compl. [Docket No. 1]). Plaintiff fails to even allege that he will be subject to said policy in the near future. (See Id.). Plaintiff's filings acknowledge that he is not presently subject to the "End of Life Care" policy, and the same filings lack any assertion that he will soon be subject to this policy. (See, e.g., Plf.'s Mem. [Docket No. 47] at 4). Instead, Plaintiff asserts that while he does not presently meet the requirements for the "End of Life Care" policy—which he argues would necessarily equate to him meeting the requirements for discharge, he is here seeking assurance that he will be "discharge[d] from [the] MSOP when the statute demands it and not before." (Id.). This is not the type of imminent, concrete injury-in-fact necessary to demonstrate Plaintiff's standing or the ripeness of his claim.

At some future, unknown date, Plaintiff may hypothetically be subject to the MSOP's end-of-life care protocols, but his being subject to said protocols is not necessarily a foregone conclusion or even an imminent outcome. For example, Plaintiff has not alleged any factual basis upon which this Court could reasonably conclude that the same end-of-life care protocols will be

---

[6] "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). However, although the pleadings of a pro se party are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

in effect at the future, hypothetical time when Plaintiff becomes subject to said protocols. Even this hypothetical scenario in which Plaintiff becomes subject to the MSOP's end-of-life care protocols requires more than simply the passage of time to reach fruition; it also presumes, without any factual basis, that Plaintiff will still be civilly committed to the MSOP at the future time when he hypothetically becomes subject to end-of-life care policies. This is the type of hypothetical, conjectural harm which is insufficient to demonstrate an imminent, concrete harm.[7]

As specifically applied to the issue of standing, Plaintiff has failed to demonstrate a concrete, particularized, and imminent injury-in-fact or the imminent threat of such an injury. Instead, Plaintiff—as discussed above—has alleged only a hypothetical threat of injury based on his presumed conjecture that he will be subject to the MSOP's end-of-life protocols at some future, unspecified point in time and that the MSOP's end-of-life protocols will be the same at this future, unspecified point in time. Thus, Plaintiff has failed to demonstrate he has standing to pursue his present claim.

As specifically applied to the issue of ripeness, Plaintiff has failed to satisfy the "fitness of the issue" prong of the test to determine whether a claim is ripe for adjudication by the Court. This prong considers whether the issue or claim will benefit from further factual development to avoid issuing advisory opinions on issues contingent of future possibilities. For all the reasons discussed above, Plaintiff's claim here will benefit from further factual development, and his claim is contingent on future possibilities. Plaintiff has not alleged that he is subject to the MSOP's present "End of Life Care" policy or that he will be subject to said policy at any time in the imminent future. In other words, his claim is contingent on the factual circumstances around

---

[7] Although a plaintiff is not required "to await the consummation of threatened injury to" demonstrate a claim's ripeness or to demonstrate an injury-in-fact sufficient to support standing, the prospective or threatened injury must be "certainly impending." See Emps. Ass'n, Inc. v. United Steelworkers of Am., AFL-CIO-CLC, 32 F.3d 1297, 1299 (8th Cir. 1994). In the present case, Plaintiff has failed to demonstrate that his perceived, prospective injury is "certainly impending."

MSOP's "End of Life Care" policy not changing for an unspecified length of time and his health deteriorating in the specific manner necessary to subject him to the MSOP's "End of Life Care" policy. Rather than prematurely consider the issue now, the consideration of Plaintiff's claims will benefit from allowing the factual record to develop until Plaintiff is in imminent threat of being subject to the MSOP's "End of Life Care" policy, again assuming solely for the sake of argument that the Plaintiff still takes issue with the MSOP's end of life protocols in effect at this future, unspecified date. On this basis, the Court finds that Plaintiff's claims are not ripe for this Court's review.

In summary, Plaintiff has failed to demonstrate that he has standing to pursue his claim here or that his claim is ripe for this Court's review. Consequently, this Court lacks subject matter jurisdiction over Plaintiff's claim.[8]

Therefore, to the extent Defendants' Motion seeks an Order of this Court dismissing Plaintiff's Complaint, the undersigned recommends Defendants' Motion to Dismiss, [Docket No. 25], be granted. The undersigned recommends, however, that this dismissal be without prejudice. The proper form of dismissal, when said dismissal is based on a lack of subject matter jurisdiction, is dismissal without prejudice. See, e.g., Johnson v. St. Louis Cnty. Pub. Health & Hum. Servs., No. 19-cv-111 (SRN/LIB), 2019 WL 7580104, at *7 (D. Minn. Aug. 28, 2019), report and recommendation adopted, 2019 WL 5677871 (D. Minn. Nov. 1, 2019), aff'd, 817 F. App'x 294 (8th Cir. 2020); Woolery v. Peterson, No. 16-cv-1745 (JRT/FLN), 2016 WL 6916801, at *2 (D. Minn. Nov. 22, 2016). Thus, to the extent Defendants' Motion seeks a dismissal with prejudice, the undersigned recommends Defendants' Motion to Dismiss, [Docket No. 25], be denied.

---

[8] Because the Court finds that dismissal is required for lack of subject matter jurisdiction, it is not necessary for the Court to address Defendants' other arguments in support of dismissal. To do so would run counter to one of the underlying purposes of the standing and ripeness doctrines—the avoidance of issuing advisory opinions.

**III.    Plaintiff's Motion to Appoint Counsel. [Docket No. 37].**

Plaintiff again asks this Court to appoint him legal counsel. (Plf.'s Mot. [Docket No. 37]). Plaintiff asserts that he needs legal counsel because he "is unable to afford counsel" and because his "imprisonment and [unspecified] disabilities will greatly limit his ability to litigate." (Id.).

As the Court previously explained in its October 4, 2022, Order, [Docket No. 11], there is no constitutional or statutory right to appointed counsel in civil litigation. See, e.g., Crozier for A.C. v. Westside Cmty. Sch. Dist., 973 F.3d 882, 889 (8th Cir. 2020) (quoting Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996)); Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). Whether to appoint counsel in civil proceedings like these is a decision "committed to the discretion of the trial court." McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997) (citing cases); In re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986). Factors to consider include "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent person to present the claims; and (5) the complexity of the legal arguments." Crozier, 973 F.3d at 889 (citing cases).

In the present case, Plaintiff's filings largely demonstrates that Plaintiff is able to communicate effectively in written materials, and the Court has no reason to believe that litigating this action will be so factually or legally complex as to warrant the appointment of counsel. Furthermore, at this stage of the proceeding and especially in light of the present recommendation of dismissal, there is no reason to believe that conflicting testimony will present any difficulties. The Crozier factors, then, weigh in favor of denying Plaintiff's request for counsel.

Therefore, Plaintiff's Motion to Appoint Counsel, [Docket No. 37], is **DENIED**.

## IV.    Conclusion

Therefore, for the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion to Appoint Counsel, [Docket No. 37], is **DENIED**; and

2. Defendants' Motion for Extension of Time, [Docket No. 42], is **GRANTED**.

Furthermore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 25], be **GRANTED in part** and **DENIED in part**, as set forth above; and

2. Plaintiff's Complaint be **DISMISSED without prejudice**.


Dated: May 16, 2023                                         s/Leo I. Brisbois
                                                            Hon. Leo I. Brisbois
                                                            United States Magistrate Judge




**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).